IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| James R. Plyler, #120900, ) | |
| ) | Civil Action No. 6:05-3367-DCN-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| State of South Carolina, ) | |
| ) | |
| Respondents. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**FACTS PRESENTED**

The record reveals that the petitioner is currently confined the Kirkland Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Chesterfield County Clerk of Court. The petitioner was indicted at the July 1983 term of the Court of General Sessions for Chesterfield County for murder and armed robbery involving an incident on May 31, 1983. He was represented by James I. Redfearn, George W. Gregory, Jr., and Stephen C. Wallace of the Chesterfield County Bar. The State filed a notice of intent to seek the death penalty in the matter based upon the existence of an aggravated circumstance of armed robbery. A jury trial began on

February 27, 1984, before the Honorable Marion H. Kinon, Presiding Judge. The petitioner was found guilty of murder and armed robbery. A separate penalty phase was held, following which the jury entered a recommendation of life imprisonment. Thereafter, the petitioner was sentenced by Judge Kinon to confinement for a period of life for murder and 25 years for armed robbery.

The petitioner filed a timely notice of intent to appeal in the South Carolina Supreme Court. On July 1, 1985 the South Carolina Supreme Court summarily affirmed the conviction pursuant to then Rule 23 of the Rules of Practice of the Court. *State v. Plyler*, Memo. Op. No. 85-MO-164 (S.C.S.Ct. July 1, 1985). The petitioner then filed his first application for post-conviction (PCR) relief on June 4, 1990. *Plyler v. State of South Carolina*, 90-CP-13-219. In this application, the petitioner made the following allegations:

> (1) Applicant was denied the effective assistance of counsel in violation of his Sixth and Fourteenth Amendments to the United States Constitution, for failing to properly and accurately advise the Applicant of the procedures to file for his right to an appeal.
>
> (2) The Applicant has been subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, as well as Article I, Section 15, the South Carolina Constitution by imposition of a sentence which is unduly harsh and unusual.
>
> (3) Applicant was denied his right to due process and equal protection of the law, in violation of his Fourteenth Amendment to the United States Constitution, by virtue of the illegal passage of laws in violation of Article 3, Section 17 of the State Constitution of South Carolina, namely the Omnibus Criminal Justice Improvement Act of 1986 or by helping to bring about these more than 230 illegal bobtail acts in violation of their own State Constitution, therefore, making Applicant's time more onerous and unconscionable by the application to Applicant. Applicant was never told by the court or counsel that such legislation could be passed or that such legislation would effect his rights and privileges or at that time more new acts or laws may be forthcoming to alter his time.

> (4) Applicant was denied his right to due process and equal protection of the law in violation of the Ex Post Facto Clause, Article I, Section 10 and the Fourteenth Amendment to the United States Constitution by the passage of the Omnibus Criminal Justice Improvements Act of 1986, in violation of the State Constitution of South Carolina, under Article III, Section 17 in that the State helped to bring about the more than 230 illegally "bobtailed act" in violation of their own state laws and therefore caused the Applicant time to be more onerous and unconscionable by the application in an Ex Post Facto and illegal passage of the act to deny him work release, earned work credits, parole eligibility, and furloughs that were in effect at the time of his sentence.

The respondents made a return to the application on September 4, 1990. On May 2, 1991, an evidentiary hearing was held before the Honorable Edward B. Cottingham, Presiding Judge. The petitioner was represented by Jay E. Hodge, and the respondents were represented by W. Teresa Nesbitt of the Attorney General's Office. At the evidentiary hearing testimony was taken from the petitioner, James I. Redfearn, George W. Gregory, Jr., and Stephen S. Wallace.

On June 20, 1991, Judge Cottingham entered an order granting in part and dismissing in part the PCR application. Judge Cottingham granted the application as it related to the petitioner's right to earn statutory work credits toward a reduction in his parole eligibility date, and denied the application on the remaining grounds. The order included resolution of another ground five set out as follows:

> (5) Ineffective assistance of counsel, in that:
>
> (a) Failed to impeach several of the State's witnesses with readily available evidence involving crimes of moral turpitude;
>
> (b) ...did not try to suppress the testimony of codefendants or illegal obtained evidence;
>
> (c) ...defense counsel presented no evidence or testimony, and had available to him a defense that his client could present an alibi and when it occurred, these errors and omissions amounted to virtual abdication of

3

> defense counsels responsibility to serve as an advocate on behalf of his client.

In addressing the ineffective assistance of counsel claim, the state PCR court concluded as follows:

> In his final allegation, the Applicant alleges that he received ineffective assistance of trial counsel. This Court finds that this allegation is conclusively refuted by the record before the Court. This Court finds as fact that all of the attorneys for the Applicant talked with him a numerous amount of time. This Court finds that counsel visited the scene of the crime, visited the Applicant at jail, talked with all of the key witnesses pertinent to the Applicant's case, and researched the Applicant's case. This Court finds that counsels filed in excess of twenty-seven (27) motions and that counsel Redfearn had a long meeting with David Bruck, of the South Carolina Bar, to discuss the best avenue of defense in the Applicant's case. This Court finds that counsels were successful in securing a change of venue for the Applicant's case because the victim in the case was the mayor of Pageland. This Court finds that counsels secured statements from the investigating officers and determined that the case against the Applicant was very strong. This Court finds from the extensive trial record and testimony at the post-conviction relief hearing that counsels for the Applicant were competent. This Court finds that the attorneys for the Applicant were diligent in their representation of the Applicant, performed well within the range of competence demanded of attorneys in criminal matters and performed within the wide range or reasonable professional assistance. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984); Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985); Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366 (1985).
>
> In Strickland v. Washington, supra, the United States Supreme Court held that a convicted defendant's claim that counsel's assistance was so defective as to require a reversal of a conviction requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. 104 S.Ct. At 2064. This Court finds that counsels' performance was not deficient nor was the Applicant prejudiced in any way by such performance.

4

> Based on all of the foregoing, this Court finds and concludes that the Applicant has sustained his burden of proving that he is being unconstitutionally denied the right to apply earned work credits toward a reduction in his parole eligibility date and that the Applicant's Application on that issue is granted. This Court finds as to the Applicant's remaining issue that the has failed in his burden to prove any constitutional violations or deprivations occurring prior to or after his trial...."

On July 13, 1991, Judge Cottingham entered an amended order denying post-conviction relief. In the amended order he corrected the dates set out previously concerning the start date. In particular, he corrected that the sentence starting date was February 28, 1983, that the petitioner had been earning work credits since March 1983 and had never stopped earning those credits, and further stated that all credits earned before March 1983 and May 1985 had been applied toward reduction of the petitioner's parole eligibility date; however, those credits earned after May 21, 1985, were not being applied. At that time, the petitioner's next parole hearing date was set for February 15, 2003, and his work eligibility was February 15, 2001.

The petitioner appealed the denial of his PCR application to the Supreme Court of South Carolina. He was represented on appeal by Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense. On November 27, 1991, the petitioner filed a state petition for writ of certiorari raising the following question:

> Did Petitioner receive effective assistance of counsel where the trial lawyer failed to object to a burden-shifting final instruction on malice?

The respondents made a return on January 21, 1992. On March 25, 1992, the petition for writ of certiorari was granted. The appellant's and respondent's briefs were filed April 29, 1992, and June 1, 1992, respectively.

On November 16, 1992, the Supreme Court of South Carolina entered its opinion in *Plyler v. State*, 309 S.C. 408, 424 S.E.2d 477 (1992). The court affirmed the judgment dismissing the PCR application. The Supreme Court initially noted that the issue

5

presented previously, whether there was ineffective assistance of counsel for failing to object to an erroneous malice instruction, was not presented below. The Supreme Court then determined that it was procedurally barred from appellate review since it was neither raised from the PCR hearing nor ruled upon by the state PCR court, citing *Hyman v. State*, 278 S.C. 501, 299 S.E.2d 330 (1983). Alternatively, the Supreme Court also concluded that the record revealed that the petitioner had not satisfied his burden of proof to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The state court concluded that while counsel was deficient and "should have objected to the charge" on malice, the petitioner was not prejudiced under *Strickland* "given this uncontradicted evidence of malice aforethought," and the instruction was harmless beyond a reasonable doubt.

On March 3, 1993, the petitioner filed his first federal petition for writ of habeas corpus. *Plyler v. State of South Carolina, et al.*, C.A. 3:93-492-10AK. In that petition, he raised the following allegations:

> (1) Denial of effective assistance of counsel at trial at PCR hearing.
>
>> (a) IAC, counsel appointed for PCR did not amend grounds to include "malice charge". See Supreme Court Rules promulgated pursuant to the Uniform Post-Conviction Relief Act. After reviewing the record, counsel should contact the inmate to determine if an amended APCR must be filed?

Both the respondents and the habeas court assumed *arguendo* that the trial ineffective assistance of counsel claims involved the same claims actually raised in the state PCR hearing, which were the following:

> (1) Failing to closely examine the victim's gun.
>
> (2) Failing to object to the admission of dye-stained money.
>
> (3) Failing to have the petitioner's psychiatrist testify at trial.

6

>    (4)    Failing to call various members of the community to testify as witnesses.
>
>    (5)    Failing to present evidence of the illicit affair between the victim and the petitioner's mother.

On March 27, 1993, the respondents made a return to the petition. On December 3, 1993, this court recommended that the Petitioner's allegations should be dismissed as too broad and unsupported. This court further concluded that according to *Coleman v. Thompson*, 501 U.S. 722 (1991), allegations one through five regarding ineffective assistance of counsel should be dismissed based upon the petitioner's failure to timely appeal the PCR determination. Finally, this court recommended that the ineffective assistance of counsel allegation concerning the malice charge be dismissed as this charge was procedurally barred because it had not been raised at the PCR hearing, again pursuant to *Coleman*. On February 10, 1994, the Honorable Matthew J. Perry, United States District Judge, entered an order adopting this court's recommendation and dismissing the action. A judgment was entered on June 11, 1994. The petitioner did not appeal this decision.

On October 12, 2004, the petitioner filed a second PCR application in Chesterfield County. *Plyler v. State of South Carolina*, 2004-CP-13-0417. In this application, the petitioner alleged essentially the following grounds:

>    (1)    Ineffective assistance of counsel.
>
>        (a)    Failure to inform about 30 year plea offer for manslaughter.
>
>    (2)    Ex Post Facto violation.
>
>        (a)    Retro application of current parole criteria; elimination of supervised furlough, work-release and other release eligibility.
>
>        (b)    Incorporation of victim's witness for purposes of parole determination; and introduction to several classifications restrictions (related to parole outcome).

> (c) Liberty interest in parole criteria. Current parole criteria create liberty interest.

On January 31, 2005, the respondent Attorney General of South Carolina, through Assistant Attorney General Karen C. Ratigan, made a return to the PCR application, asserting that the application should be dismissed because

> (1) it is a belated application in violation of the South Carolina statute of limitations;
>
> (2) that it is successive to the previous 1990 Application for Post-Conviction Relief and the Petitioner has failed to show sufficient reason why the new grounds for relief were not raised or not properly raised in the previous Application; and
>
> (3) the matter must be dismissed on the basis of laches inasmuch as at the time the Petitioner and the Respondents believed that the transcript of the Petitioner's trial was unavailable and the direct appeal and the PCR records had been expunged due to their age

On April 29, 2005, Judge James E. Lockemy entered a conditional order of dismissal based upon the reasons asserted in the respondent's return. On August 18, 2005, Judge Lockemy entered a final order of dismissal in the matter. Thereafter, the State realized that the argument that the petition was contrary to the doctrine of laches was factually inaccurate. The State had maintained that the records from the petitioner's direct appeal and 1990 PCR were no longer available as they had been expunged. However, the State then determined that the records were in its possession. Accordingly, the State moved to strike those parts of the Conditional Order and Final Order that relied upon the doctrine of laches in denying and dismissing the PCR application. Chief Administrative Judge Michael Baxley granted that motion by order dated June 5, 2006. Judge Baxley noted that the ruling did not affect the mandate of the final order or the disposition of the case.

The petitioner made a timely appeal to the South Carolina Supreme Court. On September 1, 2005, the petitioner was advised of the applicability of Rule 227(c) of the South Carolina Rules of Appellate Practice, which required him to provide the court with a written explanation as to why the determination that his application was successive was improper. He was required to explain with sufficient facts, argument and citation to legal authority that there was an arguable basis for asserting that the determination by the lower court was improper and advised that failure to make a sufficient showing may result in the dismissal of the matter. On October 10, 2005, the South Carolina Supreme Court entered an order of dismissal, concluding "Due to the failure of appellant to provide explanation as to why the circuit court's determination was improper in the above matter, as provided for in Rule 227(c) of the South Carolina Appellate Court Rules," the matter was dismissed. On October 26, 2005, the remittitur was entered in the matter.

In his *pro se* petition now before this court, the petitioner asserts the following grounds for relief:

(1) Ineffective assistance of counsel.

(a) At original trial I had three co-counsel, one co-counsel received a plea offer of 30 years manslaughter from solicitor. Co-counsel failed to notify other co-counsels and defendant. This fact was discovered at original PCR hearing.

(2) Ex Post Facto violations.

(a) I was originally charged in May of 1983. The current parole criteria came in years after my original charge. In 1983 I was eligible for supervised furlough, work release and other release eligibilities. Victim witness advocates/organizations did not exist. Violent/non-violent classifications did not exist, therefore, I was and am unclassified. The Petitioner notes that he has not appeared before the Parole Board nor has he raised this matter before according to his pleading.

(3) Liberty interest in parole criteria.

>    (a)     Mandatory language in South Carolina Code of
>    Laws create liberty interest.

In his request for relief, the petitioner states, "either give me the 30 year manslaughter you originally offered, or give me a new trial and make State apply laws in effect at time I was charged."

On April 26, 2006, the respondent filed a motion for summary judgment. By order filed April 27, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his responses to the motion on May 15 and July 19, 2006.

## **APPLICABLE LAW**

Title 28, United States Code, Section 2254(d) and (e), provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Title 28, U.S.C., Section 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## **ANALYSIS**

The petitioner first contends that he received ineffective assistance of counsel prior to his trial since he asserts that one of his three lawyers was offered a 30-year plea to manslaughter that was communicated neither to him nor any of his co-counsel. In the May 1991 state PCR hearing before Judge Cottingham, during the testimony of Stephen Wallace, one of the petitioner's attorneys, a question was asked if he attempted to work out a plea agreement (app. 1211). Wallace testified that Mr. Youngblood (Assistant Solicitor Lee Youngblood) "offered and asked me to convey to Mr. Plyler that the State would accept

11

a guilty plea to manslaughter..." which he thought also included an offer to make a recommendation to run the sentences for robbery and murder concurrently (app. 1211-12). Wallace testified that he communicated the offer to the petitioner (app. 1212). The State asserted that there was never any offer from the State for a plea to manslaughter (app. 1214).

The petitioner testified that the prosecution had tried to get him to plead guilty to murder and strong-armed robbery, but there never was any mention of manslaughter (app. 1214). He further stated that no offer of manslaughter was ever made to him (app. 1214). Judge Cottingham declared that there was no suggestion that it was offered or accepted, and it was not an issue in the case (app. 1214). He concluded that since the petitioner said it was never offered or considered, there could not be a position that his lawyer declined an offer. Former counsel George Gregory declared that no one ever offered manslaughter to him (app. 1215). The record reveals that no attempt was made in 1991 to include this as a substantive claim for relief. Further, after Judge Cottingham's order of dismissal, no motion to alter or amend was made to assert this claim. Similarly, it was not raised in the petition for writ of certiorari or in the briefs before the South Carolina Supreme Court involving the first PCR. The claim was not presented as a substantive claim for relief in the 1993 federal habeas corpus action. This issue was asserted in the 2004 state PCR proceeding and was determined to be procedurally barred under the successive application and statute of limitations rules. The petitioner asserts that he first learned of this issue during his May 1991 state PCR hearing.

The respondents argue that the claim must be dismissed as successive to the 1993 federal habeas corpus action as the factual predicate was known to the petitioner at the time of the first federal habeas action. The respondents further note that since the factual predicate has been known since May 2, 1991, the allegation is barred by the statute of limitations. *See* 28 U.S.C. §2244(b)(2)(B)(I). As the petitioner's conviction became final

12

prior to the enactment of the AEDPA, the limitations period would begin to run with the AEDPA's effective date, April 24, 1996. *See Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000). The petitioner did not raise this allegation in any petition prior to April 24, 1997, and thus it is barred. Based upon the foregoing, this claim should be dismissed.

In his second allegation, the petitioner contends that there were "ex post facto" violations that occurred after the crime on May 31, 1983, and the trial in February 1984. Specifically, he claims that the 1986 Omnibus Criminal Justice Improvements Act, as amended in 1995, included a provision (S.C. Code Ann. §16-1-60) that changed the supervised furlough program, earned work release program, and other release and classification matters. He further claims in his third allegation that his liberty interests were impacted by the changes in the parole process. The respondents note that in his 1990 PCR action, the petitioner was successful in having earned work credits awarded. They further note that according to SCDC records, the petitioner's next parole hearing was set for October 2006 (resp. m.s.j. 16). The claims were raised in the 2004 state PCR action, and the judge ruled that the allegations were not cognizable in PCR and should be pursued through the State Administrative Procedures Act (8/18/2005 order). The respondents argue that the petitioner has failed to show that he has exhausted state remedies for these claims. *See Furtick v. South Carolina Dep't of Probation, Parole & Pardon Servs.*, 576 S.E.2d 146, 148-49 (S.C. 2003) (holding that after the Department of Probation, Parole & Pardon Services found that the petitioner was ineligible for parole as a violent offender under S.C. Code Ann. §24-21-640, the Administrative Law Judge Division had jurisdiction to review the final decision) (citing *Al-Shabazz v. State*, 527 S.E.2d 742, 758 (S.C. 2000) [holding that the PCR process is restricted to collateral attacks challenging the validity of a conviction or sentence, except for two non-collateral matters specifically listed in the PCR Act, and that an inmate may obtain review of SCDC's final decision in non-collateral or administrative

13

matters under the Administrative Procedures Act in the manner outlined therein)]. This court agrees. Accordingly, these claims should be dismissed as premature.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the petition for habeas corpus relief be denied and that the respondents' motion for summary judgment be granted. Any pending nondispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

s/ William M. Catoe<br>
United States Magistrate Judge

January 8, 2007

Greenville, South Carolina